Opinion by
Morrison, J.,
The court below submitted the case to the jury and a verdict for $310 in favor of the plaintiff was found and judgment entered thereon. 'In this appeal it is contended that the evidence did not warrant submitting the case to the jury.
The first assignment of error is, in substance, that the plaintiff had no right to sue before appealing to the association from the refusal of the visiting committee to grant the benefits *224 claimed. This question was not raised in the court below and it is contended here that it is too late to raise it for the first time in this court. Chapter IX of the by-laws of the association provides: Section 1: “The visiting committee shall consist of three members, who shall be appointed for three months, in such manner that each member shall become the chairman of said committee for the third month of his appointment.” Sections 2 and 3, of the same chapter, designate the duties of the visiting committee and it seems clear that these duties are limited to members who reside within the city of Philadelphia, and have no application to members residing abroad.
Chapter XVII requires any member absenting himself from the city to give notice to the secretary, and he may obtain leave of absence by paying his dues in advance. Section 6 reads: “Any member absent on leave, or residing elsewhere, if applying for relief shall produce or cause to be produced a certificate of a physician or counsel, and duly sworn to before a magistrate of the city, county or place where he may reside at the time of his sickness, wherein shall be mentioned the number of weeks wherein he was disabled, together with the name and nature of his complaint.”
Section XIV reads: “Any member who shall think himself aggrieved by the refusal of the visiting committee to grant the benefits he may claim, shall appeal to the association for redress before commencing a suit at law on the penalty of expulsion.”
Heinrich Thumann was a member in good standing for nine years prior to his death; he became ill in March, 1897, and went to Germany, seeking to benefit his health. From Germany he went to Philadelphia, where he remained until September, 1897, when he went to Colorado, where he remained something over a year, and from there went to Florida, where he died. Sick benefits were paid to Thumann on the certificates from Germany and the evidence is very clear that although the certificates were not sworn to, yet Thumann and the officers of the association understood and believed that they were sworn to as the by-laws required. This mistake occurred because the certificates were in German and were certified but not sworn *225 to. Thumann was paid his sick benefits while he remained in Philadelphia, after his return from Germany. While in Colorado, he caused a certificate, unsigned and not sworn to, dated September 2, 1897, to be prepared for sending to the association, but there is no evidence that it was ever received and it seems to be conceded that the officers of the association never received it. In fact, the evidence only shows that it was placed in an envelope and addressed to the secretary of the association, but there is no satisfactory evidence that it was actually mailed, although Mrs. Metzgar understood that it was. On November 9, 1898, a certificate was mailed to the secretary of the association, signed by Dr. Lucy, but not sworn to, showing that Thumann had been under his care for the last three months. This certificate was accompanied by a letter from Thumann in which no reference was made to the certificate of November 2, 1897, nor to any claim for benefits prior to the period covered in the latter certificate. The receipt of this certificate was acknowledged by the secretary, who, in reply, called to Thumann’s attention the requirements of the by-laws as to sworn proof of disability, but said he would try to have that fixed, and as soon as he should hear from him again he would see that he received his benefits as per the certificate of Dr. Lucy. Thumann replied to the secretary’s letter by saying that he was surprised when he read Dr. Lucy’s 'certificate; that he was never under his care nor of any physician in Colorado; that he said nothing about this at the time he sent the certificate, because he thought he would see what might be said about it. There was no further correspondence about the matter, and although Thumann lived for fifteen months afterwards, he made no further claim for the benefits and none were paid. It is under the certificate of December 2, 1897, and the one of November 9, 1898, that the plaintiff’s claim is made.
On December 8, 1898, Thumann sent a proper certificate of his condition from Florida, and from that time/until his death, February 18, 1900, he was regularly paid benefits, but no reference was ever made to the benefits for which this suit was brought.
*226 The questions for decision, then, are: 1. Can the plaintiff maintain this suit without a formal appeal to the officers of the association, under the by-laws, on the theory of being aggrieved, by the action of the visiting committee? 2. Was there sufficient evidence to submit to the jury as to the claim under the certificates of December 2, 1897 and November 9, 1898, from Colorado?
As to the first question, we are of the opinion that the plaintiff’s claim was not subject to the action of the visiting committee, and if certificates had been furnished from Colorado, duly made out and sworn to, as the by-laws required, that would have been a sufficient appeal to the association and the only one that the claimant was required to make while residing in Colorado. We, therefore, hold that the plaintiff had a right to bring suit on that ground and overrule the first assignment of error.
As to the second question, our judgment is in favor of the defendant. It is very clear that the deceased and his executrix understood, as they were bound to understand, that the bylaws required sworn certificates from Germany, Colorado and Florida. It is equally clear and undisputed that while the certificates from Germany were not sworn to, yet the deceased and the officers of the association believed that they were sworn to, and, therefore, it was error for the court below to allow the jury to find from the evidence a course of dealing between the parties which waived the requirement of sworn certificates.
In Myers v. Alta Friendly Society, 29 Pa. Superior Ct. 492, we held (p. 498): “To entitle a claimant to sick benefits, he must show affirmatively a strict compliance with the by-laws.” Also (same page) “To those who have associated themselves togethér these by-laws are the law by which they are to be governed.”
“Officers cannot waive by-laws intended for the protection of the members, or deprive members, other officers, or subordinate bodies, of rights accruing to them through the constitution and by-laws: ” 3 Am. & Eng. Ency. of Law (2d ed.), p. 1069.
We will not be understood as holding that if the officers of *227 the defendant association had knowingly adopted a system of paying sick benefits to the deceased, without sworn certificates, so that he was entitled to believe that such certificates were no longer required, that there might not be such a course of dealing established as would entitle the claimant to recover without sworn certificates. This because it is not necessary to so hold in the present case. But it would take a strong case to justify holding that a claimant, under such circumstances, could recover without complying with a reasonable provision of the by-laws.
The learned counsel for the appellee relies strongly on the evidence of waiver as follows : 1. “The retention by the society of the defective certificates, and failure to make objection to them.” 2. “The course of dealing, or practice of the society in accepting similiarly defective certificates immediately prior to this time, and making payments thereunder.” 3. “With special reference to certificate, dated November 9, 1898, which certificate certified that decedent had been under the doctor’s care for three months past, the letter of William H. Daugherty, the secretary of defendant, to decedent, dated November 25, 1898, misleading the decedent in believing that the certificate would be accepted.” Now, there is no evidence that the society retained defective certificates which they knew to be defective, prior to the one of November 9, 1898. If the latter certificate and the Daugherty letter stood alone, there might be some ground for the counsel’s contention. But in the light of the Dougherty letter calling Thumann’s attention to the defect in the certificate, and Thumann’s letter of December 4, 1898, in which he says: “As for the certificate of Dr. Lucy, I was very much surprised when I read it. I was not under the care of Dr. Lucy nor under the care of any doctor in Colo., except that the wound of my forehead was stitched together by a physician of Colo. Springs.” We are unable to understand how it can be argued on this state of facts that Thumann was misled or that he and his executrix could expect, without more, that the association would pay sick benefits based on the certificate of December 2,1897, never received by the association, and the one of November 9, 1898, which *228 Thumann frankly stated in his letter was false. This view of the facts renders inapplicable the half dozen authorities relied on by the counsel tending to support a waiver. Among these authorities are Stambler v. Order of Pente, 159 Pa. 492; Welsh v. London Assurance Corp., 151 Pa. 607; Carpenter v. Allemannia Fire Ins. Co., 156 Pa. 37; Insurance Co. v. Cusick, 109 Pa. 157; Insurance Co. v. Block, 109 Pa. 535; Davis Shoe Co. v. Kittanning Ins. Co., 138 Pa. 73; Thierolf v. Insurance Co., 110 Pa. 37.
These familiar authorities are very plain on the question of waiver, but the plaintiff’s difficulty is that the facts do not bring her case within the rule established by the authorities. She is forced to rely on two certificates, as to one of which there is no evidence that it ever reached the association, but there is evidence to the contrary; as to the other certificate, her husband specifically admitted in the Dougherty letter of December 4, 1898, that it was not true. After receiving that letter we do not think the secretary of the association was called upon to return the certificate or say anything more about it.
In Stambler v. Order of Pente, 159 Pa. 492, relied on by counsel for the plaintiff, the defective proofs of disability were retained by the defendant, without notice to plaintiff, of any objection thereto on any ground.
On December 8, 1898, Thumann sent a certificate from Florida and he was regularly paid benefits until he died. Under the evidence, the inference is irresistible thdt the claimant knew he had not complied with the by-laws and that he was not entitled to the benefits attempted to be established by the two certificates from Colorado. In our opinion there is not enough in the record to sustain the court in allowing the jury to find against the defendant for the benefits alleged to have accrued in Colorado. It is not necessary to discuss the several assignments separately.
The assignments of error are all sustained, except the first, and the judgment is reversed.